# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALAN W. KITCHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV938 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant United States of America's Motion for Summary Judgment. (Docket Entry 17.) Plaintiff Alan W. Kitchel has filed a brief in opposition to the motion (Docket Entry 21) and Defendant has filed a reply (Docket Entry 22). The matter is ripe for disposition. For the reasons set forth herein, the undersigned recommends that Defendant's motion be denied.

## I. BACKGROUND

Plaintiff brings this civil action seeking money damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, based on the alleged negligence of a federal government employee who was acting within the scope of his employment. (*See generally* Amended Complaint ¶ 1, Docket Entry 6.) As set forth in the Amended Complaint, on April 28, 2020, at approximately 12:36 p.m., Plaintiff was a pedestrian crossing the intersection of Western Bypass at Cornwallis Road ("Cornwallis") in Durham County, North Carolina. (*Id.* ¶ 17.) Plaintiff alleges that Jose Guillermo Santiago ("Santiago"), a United States Postal Service

1

("USPS") worker and Defendant's employee, was operating a USPS vehicle and acting within the scope of his employment as he traveled southeast on Cornwallis while Plaintiff was crossing the intersection of Western Bypass at Cornwallis. (*Id.* ¶¶ 7, 17-20.) While another vehicle that was owned and operated by Britta K. Momanyi ("Momanyi") was stopped at the intersection of Cornwallis waiting for Plaintiff to cross the street, Santiago's USPS vehicle hit Momanyi's vehicle, causing Momanyi's vehicle to spin around and strike Plaintiff resulting in injury to Plaintiff. (*Id.* ¶¶ 23-24.)

Plaintiff alleges several instances of negligence on Santiago's behalf: (1) Santiago failed to exercise the common law duty of reasonable care in the operation of a USPS vehicle at the time of and immediately preceding the collision; (2) Santiago operated the USPS vehicle on a highway without due caution and in a manner that endangered persons or property; (3) Santiago failed to keep proper lookout and to keep control of the USPS vehicle; (4) Santiago failed to see that Momanyi had stopped her vehicle, so Plaintiff, who was a pedestrian, could cross the street; and (5) Santiago failed to yield the right-of-way to Plaintiff, in violation of N.C.G.S. § 20-156(a). (*Id.* ¶¶ 25-29.) As a result of the alleged negligent acts of Santiago, Plaintiff claims damages against Defendant for personal injury totaling $110,000.00, and for property damage totaling $50.00. (*Id.* ¶¶ 33-40.)

Defendant filed the instant motion for summary judgment, asserting that Santiago was not negligent because he was responding to a sudden emergency at the time of the collision, or alternatively, that Plaintiff's recovery is barred by his own contributory negligence. (*See* Docket Entry 18.) Plaintiff opposes Defendant's arguments, asserting that the issue of sudden emergency should not be decided on a motion for summary judgement, particularly here where

2

Case 1:21-cv-00938-LCB-JLW   Document 23   Filed 04/27/23   Page 2 of 15

Santiago's common knowledge and awareness of insects flying into his vehicle while performing his work "directly contradicts any argument for classifying this situation as anything but ordinary and a part of his normal job." (Docket Entry 21 at 11.)[1] Plaintiff further asserts that he was not contributorily negligent in his walking route and in any event, Santiago had the last clear chance to avoid the collision. (*Id.* at 11-17.)[2]

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] At the outset of his brief, Plaintiff's counsel "calls into question all facts, arguments, and representations the Government has made to Plaintiff's counsel and this Honorable Court" based primarily upon errors and inaccuracies in the United States Postal Service Accident Investigation Report. (*See* Docket Entry 21 at 4-6.) Plaintiff's counsel also calls into question the credibility of the opposing party, its counsel, and others deposed. (*See id.* at 6.) In cursory fashion, Plaintiff's counsel requests that discovery be reopened and also requests a hearing. (*Id.*) While defense counsel notes the inaccuracies and misstatements of which he was unaware until the deposition of USPS Supervisor Quentin Bridgers (*see* Docket Entry 22 at 8 & n.4), the undersigned concludes that the request to reopen discovery and for a hearing is improper and otherwise unwarranted. First, Plaintiff has not filed a motion seeking to reopen discovery. Further, Plaintiff's counsel does not point to the exact inconsistencies or inaccuracies in the report which Plaintiff's counsel believes are material to any arguments in the parties' summary judgment briefs. Therefore, the undersigned concludes that no hearing is warranted and any request to reopen discovery prior to ruling on Defendant's motion is not properly before the Court.

issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty.,* 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

"The FTCA represents a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a [g]overnment employee acting within the scope of his or her employment." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). Further, "[t]he statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* (citations omitted). The substantive law of the state where a tort is alleged to have occurred controls in an FTCA action—in the instant action, that means that North Carolina law controls. *Iodice v. United States*, 289 F.3d 270, 274 (4th Cir. 2002); *Burgess v. United States*, No.

4

1:21CV805, 2023 WL 2526639, at *2 (M.D.N.C. Mar. 15, 2023) (unpublished). "In North Carolina—where [Santiago's] alleged negligent act or omission occurred—a defendant cannot be held liable for negligence absent a duty owed to the plaintiff and breach of that duty." *Durden v. United States*, 736 F.3d 296, 301 (4th Cir. 2013) (citing *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 626 S.E.2d 263, 267 (2006)). Further, the breach must be the "actual and proximate cause of plaintiff's injury," and there must be "damages result[ing] from the injury." *Gunter v. United States*, 10 F. Supp. 2d 534, 536 (M.D.N.C. 1998) (citing *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990)).[3]

A. Sudden Emergency

Defendant first contends that Santiago was not negligent because he was responding to a sudden emergency at the time of the collision. (Docket Entry 18 at 7-10.) "The doctrine of sudden emergency applies when a defendant is confronted by an emergency situation not of his own making and requires defendant only to act as a reasonable person would react to similar emergency circumstances." *Weston v. Daniels*, 114 N.C. App. 418, 420, 442 S.E.2d 69, 71 (1994) (citation omitted). The North Carolina Court of Appeals has held that "'[s]udden emergency' is not a legal defense which may operate to bar an action; it is only one factor to consider in making the reasonable person determination." *Helms v. Church's Fried Chicken, Inc.*, 81 N.C. App. 427, 432, 344 S.E.2d 349, 352 (1986). It further explained:

> That one was faced with an emergency before the injury occurred does not. . . necessarily shield [one] from liability. He [or she] must still act, after being confronted with the emergency, as a

---

[3] "Proximate cause is a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary prudence could have reasonably foreseen that such a result or some similar injurious result was probable." *Murphey v. Georgia Pac. Corp.*, 331 N.C. 702, 706, 417 S.E.2d 460, 463 (1992).

> reasonable person so confronted would then act. *The emergency is merely a fact* to be taken into account in determining whether he [or she] has acted as a reasonable [person] so situated would have done.

*Id.* (emphasis in original) (citation omitted).

The sudden emergency doctrine most often arises in cases involving vehicular accidents and provides a less stringent standard of care in assessing negligence claims. *See City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 622 n.3 (M.D.N.C. 2020); *White v. Greer,* 55 N.C. App. 450, 453-54, 285 S.E.2d 848, 851 (1982). To apply the sudden emergency doctrine, two elements must be satisfied: "(1) an emergency situation must exist requiring immediate action to avoid injury, and (2) the emergency must not have been created by the negligence of the party seeking the protection of the doctrine." *Sobczak v. Vorholt*, 181 N.C. App. 629, 638-38, 640 S.E.2d 805, 812 (2007) (citation omitted). "An emergency situation has been defined as that which compels a party to act instantly to avoid a collision or injury." *Carrington v. Emory*, 179 N.C. App. 827, 830, 635 S.E.2d 532, 534 (2006) (internal quotations and citation omitted); *see also Mathis v. Terra Renewal Servs., Inc.*, No. 3:19-CV-180-RJC-DSC, 2021 WL 5242874, at *6 (W.D.N.C. Nov. 10, 2021) (unpublished) ("A sudden emergency is one that is unforeseen and, because of this quality, causes surprise and terror." (citing *Horton Motor Lines v. Currie*, 92 F.2d 164, 168 (4th Cir. 1937))). Ultimately, "[i]n the face of an emergency, a person is not held to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence would have made in similar circumstances." *Fulmore v. Howell*, 227 N.C. App. 31, 35, 741 S.E.2d 494, 497 (2013) (quoting *Tharpe v. Brewer,* 7 N.C. App. 432, 438, 172 S.E.2d 919, 924 (1970)).

To support this argument on the issue of sudden emergency, Defendant points to Santiago's deposition testimony in which he testified that as he accelerated onto Cornwallis heading toward his first delivery with Momanyi's vehicle directly in front of him, a wasp entered Santiago's USPS vehicle through an open window, flew around near the inside of the dashboard, then flew toward Santiago and landed on his face towards his cheek and neck. (Deposition of Jose Santiago ("Santiago Dep.") 25:12-26:14; 35:18-21, Docket Entry 18-2.) Upon feeling the wasp on his face and wanting to get it off him, Santiago "took [his] eyes off the road for a second because [he] thought [he] was going to get stung[.]" (*Id.* at 26:15-17.) Santiago estimates that "one or two seconds went by," then he hit Momanyi's vehicle. (*Id.* at 26:18-19.) Santiago does not recall applying his breaks (*id.* at 40:1-9), although Momanyi testified that Santiago did attempt to swerve to the left right before the collision. (Deposition of Britta Momanyi ("Momanyi Dep.") 17:24-18:4, Docket Entry 18-3.) The collision caused Momanyi's vehicle to strike Plaintiff. (*See id.* at 18:14-15; Deposition of Alan W. Kitchel ("Kitchel Dep.") 24:22-25:2, Docket Entry 18-1; *see also* Accident Report, Docket Entry 18-5.)

Having experienced a wasp sting in the past, which Santiago describes as very painful, he immediately reacted to the wasp landing on him, trying to swat it away. (Santiago Dep. 35:15-25.) He testified that he did not recall a "burning sensation" or sting during the instant incident, though "[u]nder that level of anxiety and stress, that is something that you can easily miss." (*Id.* at 36:1-2, 10-13.) During the wasp attack, Santiago's attention was not on the road. (*Id.* at 38:13-22.) In light of these facts, Defendant contends that Santiago was not negligent, but rather presented with a sudden emergency when the wasp entered his vehicle and landed

7

on his face to which he instinctively and naturally responded to protect against harm causing his attention to be diverted such that he could not gage his proximity to Momanyi's vehicle.

Plaintiff argues in opposition that Santiago was not in a sudden emergency situation at the time of the collision and instead appreciated the precautionary acts to be taken while driving his USPS vehicle. Plaintiff points to Santiago's own testimony of his comfort level with insects flying in the vehicle while on the job, (*see* Santiago Dep. 26:9-11 ("And I'm comfortable on that, because the one thing that you get used to in the post office is bugs flying into your vehicle.")). While Defendant contends that this single fact is unfavorable to Plaintiff's position (*see* Docket Entry 22 at 1-2), the undersigned concludes that it, at minimum, creates a genuine issue of material fact as to whether the sudden emergency doctrine applies. This fact here raises a question of whether there were *unforeseeable* changes in conditions here, *Mathis*, 2021 WL 5242874, at *6 ("[a] sudden emergency is one that is unforeseen"), causing Santiago to act instantly, and thereby being an actual emergency situation, *see Carrington*, 179 N.C. App. at 830, 635 S.E.2d at 534. Indeed, the sudden emergency doctrine would be improper if Santiago reasonably should have, given the circumstances, expected the situation which the wasp presented. *See Sobczak*, 181 N.C. App. at 639, 640 S.E.2d at 812 (internal brackets, quotations, and citation omitted) ("A sudden emergency instruction is improper absent evidence of a sudden *and unforeseeable* change in conditions to which the driver must respond to avoid injury.") (emphasis in original); *Banks v. McGee*, 124 N.C. App. 32, 34, 475 S.E.2d 733, 734 (1996) (finding that the evidence shows that the defendant was aware of road conditions and rejecting argument that she was "confronted with an unanticipated situation," explaining

8

that "[t]he question is not what [the defendant] saw but instead what a reasonable person in her situation should have seen").

The parties agree, as well as the Court, that there is no controlling authority of whether a wasp entering a vehicle under the circumstances presented here constitutes a sudden emergency. Defendant nevertheless contends that several other courts have addressed the issue and have concluded that wasp or bee attacks constituted emergency situations sufficient to warrant jury instructions on sudden emergency. *See Lussan v. Grain Dealers Mut. Ins. Co.*, 280 F.2d 491 (5th Cir. 1960) (affirming trial court's finding of no negligence where driver was distracted by a wasp, hit a parked car, and injured guest passenger); *Heerman v. Burke*, 266 F.2d 935, 938 (8th Cir. 1959) (reversing the trial court and remanding for a new trial as "it was up to the jury to say whether the wasp's entering the [defendant driver's] shirt sleeve created an emergency"); *Frazier v. Drake*, 131 Nev. 632, 635, 357 P.3d 365, 367 (Nev. App. 2015) (finding that "the district court did not abuse its discretion by giving the sudden emergency jury instructions" after bees flew into truck cabin, one landing on the driver's eye); *Sameth v. Fields*, No. 01-88-00983-CV, 1989 WL 89115 (Tex. App. Aug. 3, 1989) (unpublished) (affirming trial court's jury instruction on sudden emergency where a wasp flew into driver's car, and as he swatted it, he hit another vehicle), *writ denied* (Nov. 22, 1989). Ultimately, while these cases provide examples of the application of the sudden emergency doctrine in the context of a wasp or bee sting, the undersigned concludes that the facts in the instant case create a genuine issue of material fact precluding summary judgment in favor of Defendant on this argument. *See Heerman*, 266 F.2d at 939 ("The question[ of] whether an emergency existed . . . ordinarily are questions of fact for the jury."); *Lindsay v. Public Serv. Co. of N.C., Inc.*, 725 F. Supp. 278,

281 (W.D.N.C. 1989) ("Matters involving negligence claims are not ordinarily good candidates for summary judgment disposition."); *DeHaven v. Hoskins*, 95 N.C. App. 397, 402, 382 S.E.2d 856, 859 (1989) ("Negligence claims . . . should rarely be disposed of by summary judgment.").[4]

B. <u>Contributory Negligence</u>

Defendant next contends that summary judgment should be granted in its favor because Plaintiff was contributorily negligent. (Docket Entry 18 at 11-15.) Plaintiff denies any contributory negligence on his part and further asserts that even if it was applicable, Santiago had the last clear chance to avoid the collision. (Docket Entry 21 at 11-17.) Contributory negligence "is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." *Fisk v. Murphy*, 212 N.C. App. 667, 670, 713 S.E.2d 100, 102 (2011) (internal quotations and citation omitted). "In North Carolina, a plaintiff's right to recover in a personal injury . . . action is barred upon a finding of contributory negligence." *Scheffer v. Dalton*, 243 N.C. App. 548, 556, 777 S.E.2d 534, 541 (2015) (citation omitted). To establish contributory negligence, a defendant must demonstrate "(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury." *Ellis v. Whitaker*, 156 N.C. App. 192, 195, 576 S.E.2d 138, 141 (2003) (citing *Construction Co. v. R. R.,* 184 N.C. 179, 180, 113 S.E. 672, 673 (1922)).

Contributory negligence here, however, "will not bar an award of damages for Plaintiff if [he] can prove that [Santiago] had the last clear chance to avoid the collision, but failed to

---

[4] While the FTCA only permits bench trials, *see* 28 U.S.C. § 2402, the undersigned nevertheless concludes that the issues surrounding negligence in this matter should be reserved for the factfinder at trial.

10

take action." *Patterson v. Worley*, 265 N.C. App. 626, 630, 828 S.E.2d 744, 748 (2019). "The doctrine of last clear chance presupposes antecedent negligence on the part of the defendant and antecedent contributory negligence on the part of the plaintiff, such as would, but for the application of this doctrine, defeat recovery." *Clodfelter v. Carroll*, 261 N.C. 630, 634, 135 S.E.2d 636, 638 (1964).

> For the doctrine to apply it must appear 'that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, having the means and the time to avoid the injury, negligently failed to do so.'

*Vernon v. Crist*, 291 N.C. 646, 655, 231 S.E.2d 591, 596 (1977) (quoting *Exum v. Boyles*, 272 N.C. 567, 576, 158 S.E.2d 845, 853); *see also Vancamp v. Burgner*, 328 N.C. 495, 498, 402 S.E.2d 375, 376-77 (1991) (setting forth elements of last clear chance doctrine). In situations "[w]here there is no evidence that a person exercising a proper lookout would have been able, in the exercise of reasonable care, to avoid the collision, the doctrine of last clear chance does not apply." *Cable v. FedEx Freight, Inc.*, No. 1:13CV465, 2014 WL 6810816, at *8 (M.D.N.C. Dec. 2, 2014) (unpublished) (citation omitted). It is Plaintiff's burden to show that the last clear chance doctrine is applicable in this case. *See Griffin v. United States*, No. 1:19CV445, 2020 WL 5411678, at *3 (M.D.N.C. Sept. 9, 2020) (unpublished) (citation omitted).

In North Carolina, "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection [must] yield the

right-of-way to all vehicles upon the roadway." N.C. Gen. Stat. § 20-174(a).[5] "[P]edestrians have a duty to maintain a lookout when crossing an area where vehicles travel and a duty to exercise reasonable care for their own safety." *Corns v. Hall*, 112 N.C. App. 232, 237, 435 S.E.2d 88, 90 (1993). While violation of N.C. Gen. Stat. § 20-174(a) "is not contributory negligence *per se*, a failure to yield the right-of-way to a motor vehicle may constitute contributory negligence as a matter of law[.]" *Meadows v. Lawrence*, 75 N.C. App. 86, 89, 330 S.E.2d 47, 49 (1985), *aff'd*, 315 N.C. 383, 337 S.E.2d 851 (1986) (internal citation omitted); *see also Turpin v. Gallimore*, 8 N.C. App. 553, 555, 174 S.E.2d 697, 699 (1970) ("No inflexible rule can be laid down as to whether the evidence discloses contributory negligence as a matter of law, but each case must be determined upon its own particular facts.") (citation omitted). Equally important, "[a] driver of a motor vehicle upon the highway owes a duty to all other persons using the highway to maintain a reasonable lookout in the direction of his travel." *Miller v. Wright*, 272 N.C. 666, 671, 158 S.E.2d 824, 828 (1968) (citation omitted); *see also* N.C. Gen. Stat. § 20-174(e) ("every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway").

Here, Defendant contends that Plaintiff's contributory negligence was a proximate cause of his injury because he was walking alongside the road, with traffic and no sidewalk, choosing the right side of the road that was mostly grassy area because there was no room on the left. (*See* Kitchel Dep. 17:14-17, 20:1-21:3.) Plaintiff did not stop before beginning to

---

[5] Further, "[w]here sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the extreme left of the roadway or its shoulder facing traffic which may approach from the opposite direction. Such pedestrian shall yield the right-of-way to approaching traffic." N.C. Gen. Stat. § 20-174(d).

12

cross Western Bypass, though he did look behind himself and noticed a green light at a stoplight before the collision. (*Id.* at 23:24-24:5.) While Plaintiff testified that he saw some "white lines" and "thought [he] could see where you would walk," (*see id.* at 26:3-9), both Santiago and Momanyi testified that the intersection had no crosswalk (*see* Santiago Dep. 69:18-23; Momanyi Dep. 41:4).[6] Further, Plaintiff was in the middle of the intersection when he first saw Momanyi's vehicle beside him, and he did not become aware of Santiago's vehicle at all before the collision. (Kitchel Dep. 25:3-6, 26:15-27:3.) Defendant further points to Santiago and Momanyi's testimony about that particular stretch of road where the collision occurred which Momanyi had not seen pedestrians along that route nor had Santiago seen persons crossing that intersection. (Momanyi Dep. 40:23-24; Santiago Dep. 69:24-70:2, 70:11-14.)[7] Defendant thus contends that Plaintiff was negligent and one of the proximate causes of his own injuries.

Plaintiff contends otherwise, asserting that he walked on the side of the road with more room. (Kitchel Dep. 17:8-17.) Plaintiff had walked the route at least 12 to 15 times prior to the incident, staying away from traffic as much as possible. (*Id.* at 19:19-22, 20:11-17.) Plaintiff did not believe his walking route was dangerous and had never experienced close calls with vehicles as he crossed streets. (*Id.* at 22:17-23:1.) While Plaintiff was in the middle of the intersection when he first saw Momanyi's vehicle beside him, Plaintiff testified that he "saw a

---

[6] The photograph of the intersection submitted by Defendant does not show any crosswalk. (*See* Docket Entry 18-4.)

[7] When talking about a portion of Cornwallis from Plaintiff's home to the location of the accident, Santiago also testified that "[t]here's really no safe place to be walking in there. People don't do it. And the very few that [do], they are unbelievably careful because there are no sidewalks, there is nothing." (Santiago Dep. 48:25-49:4.)

13

car with the signal on turning, and as it turned, a [vehicle] behind them hit that car and catapulted it into [him]. (*Id.* at 24:19-21.)[8] Plaintiff states he had no time to react. (*Id.* at 26:1-2.)

Viewing the facts in the light most favorable to Plaintiff and resolving all reasonable inferences in his favor, the undersigned concludes that it cannot find as a matter of law that Plaintiff was contributorily negligent. It is "[o]nly when Plaintiff's own evidence discloses contributory negligence *so clearly* that no other conclusion can be reached should summary judgment be granted." *Richardson v. Gen. Motors Corp.*, 223 F. Supp. 2d 753, 758 (M.D.N.C. 2002) (emphasis added) (citing *Morgan v. Cavalier Acquisition Corp.,* 111 N.C. App. 520, 432 S.E.2d 915 (1993)); *see also Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002) ("The existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached."). Given the facts above, this is not a rare instance where summary judgment should be granted on this issue as a reasonable factfinder could conclude that Plaintiff took all necessary precautions under the circumstances and was not negligent. Therefore, Defendant's motion for summary judgment should be denied on this issue. Further, as to the issue of Plaintiff's "last clear chance" argument (Docket Entry 21 at 16-17), the Court cannot determine the applicability of this argument at this time given the other matters remaining for

---

[8] Momanyi testified that as she prepared to turn right on Western Bypass, she noticed Plaintiff and stopped to wait for him to cross. (Momanyi Dep. 17:10-12.) Momanyi does not recall making eye contact with Plaintiff while he was crossing, but she "think[s] he did look in [her] direction." (*Id.* at 42:15-19, 42:24-43:1.)

14

trial. *See OmniSource Corp. v. Heat Wave Metal Processing, Inc.*, No. 5:13-CV-772-D, 2015 WL 3452918, at *12 (E.D.N.C. May 29, 2015) (unpublished) ("Because this court cannot determine as a matter of law whether [the plaintiff] was contributorily negligent, it also cannot evaluate the merits of the last clear chance doctrine at this time.").

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 17) be **DENIED**.

/s/ Joe L. Webster<br>
United States Magistrate Judge

April 27, 2023  
Durham North Carolina